IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-CV-2876-MSK

MARCUS COLEMAN,

    Plaintiff,

*v.*

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

---

**OPINION AND ORDER REVERSING THE COMMISSIONER'S DECISION**

---

**THIS MATTER** comes before the Court on the Plaintiff's Complaint (**# 1**), the Plaintiff's Opening Brief (**# 17**), the Defendant's Response (**# 18**), and the Plaintiff's Reply (**# 21**). For the following reasons, the Commissioner's decision is reversed and the matter is remanded for further proceedings.

## I.    JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g).

## II.    BACKGROUND

**A.    Procedural History**

Marcus Coleman seeks judicial review of a final decision by the Commissioner denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. In April 2014, Mr. Coleman filed for DIB and SSI, claiming he became disabled in September 2013. Tr. at 218–30. His application was denied at all

1

administrative levels and he now appeals to this Court pursuant to 42 U.S.C. § 405(g).

**B.  Factual Background**

The Court summarizes only the medical evidence relevant to its decision.

At the time of his alleged onset of disability, Mr. Coleman was 34 years old.  Tr. at 219. He was previously employed in a number of jobs, but primarily as a fire inspector.  Tr. at 278. He claimed that he was disabled due to, among other things, back pain, migraines, and anxiety. Tr. at 79.

In June 2016, a day after the administrative hearing in this case, Dr. Fernando Miranda wrote a brief opinion about Mr. Coleman's impairments.  Tr. at 723.  The opinion read: "Patient cannot sit or stand for long periods of time needs to sit and stand at will due to back, leg, neck pain."  Tr. at 723.

**C.  The ALJ's Decision**

In October 2016, the ALJ issued an unfavorable decision to Mr. Coleman.  Tr. at 20–31. At step one, the ALJ found that Mr. Coleman had not engaged in substantial gainful activity from September 18, 2013, through his date last insured of December 31, 2018.  Tr. at 22.  At step two, the ALJ found that Mr. Coleman had the following severe impairments: spine disorders, an anxiety disorder, and migraine headaches.  Tr. at 22–23.  At step three, she found that Mr. Coleman had no impairment that met or medically equaled the presumptively disabling conditions listed in 20 C.F.R. Part 404, Appendix 1.  Tr. at 23–24.  The ALJ found that Mr. Coleman had the residual functional capacity (RFC) to perform light work with the following limitations: he must be able to switch between sitting and standing every 30 minutes if he desires; he can only occasionally stoop, or push and pull with his lower extremities; he can never climb ladders, ropes, and scaffolds; he can never be exposed to workplace hazards such as

moving mechanical parts and unprotected heights; he must work indoors to avoid direct sunlight; he can only be exposed to a moderate noise intensity; he can have no more than occasional exposure to pulmonary irritants such as dusts, odors, fumes, and gases; he is limited to simple, routine, repetitive tasks and simple work-related decisionmaking; he cannot work at a production pace; he can only adjust to at most occasional changes in the general nature of the work setting or tasks to be performed; and he can have no more than occasional interaction with coworkers, supervisors, and the general public. Tr. at 25. At step four, the ALJ found that Mr. Coleman was unable to perform his past relevant work. Tr. at 29. At step five, the ALJ concluded that, considering Mr. Coleman's age, education, work experience, and RFC, he could perform the following jobs in the national economy: general office helper, mail sorter, and photocopy scanner operator. Tr. at 29–30. In crafting the RFC, the ALJ gave some weight to Dr. Miranda's opinion. Tr. at 28.

### III. STANDARD OF REVIEW

Though the Court's review is de novo, the Court must uphold the Commissioner's decision if it is free from legal error and the Commissioner's factual findings are supported by substantial evidence. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is evidence a reasonable person would accept to support a conclusion, requiring "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may not reweigh the evidence, but it looks to the entire record to determine if substantial evidence exists to support the Commissioner's decision. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

### IV. DISCUSSION

Mr. Coleman argues that the ALJ erred in (1) failing to consider his panic disorder at

3

steps two and four, (2) failing to consider his migraines at step three, (3) considering the combined effect of his impairments at step four, (4) evaluating the opinion of Dr. Saleh Parvez, and (5) evaluating the opinion of Dr. Miranda. Because the Court reverses and remands the decision based on legal error in evaluating Dr. Miranda's opinion, it declines to reach the other claims.[1]

A treating physician's opinion must be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques *and* is consistent with the other substantial evidence in the record. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). In answering these questions, the ALJ must articulate specific, legitimate reasons that describe how the opinion is unsupported by clinical and laboratory diagnostic techniques, or identify the inconsistent evidence in the record. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

If the answer to either of these inquiries is "No", then the opinion is not accorded controlling weight, but is, instead, assessed for comparative weight relative to other medical opinions. The factors considered for comparative this assessment of medical opinions are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

---

[1] Though the Court does not discuss the evaluation of Dr. Parvez's opinion, it does note that, in rejecting the opinion, the ALJ relied heavily on global assessment of functioning (GAF) scores as detailed in the *DSM-IV*. *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000). A newer version of the *DSM* dropped the GAF scale due to its "lack of clarity" and "questionable psychometrics". American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013). On remand, the ALJ should discuss other reasons for discounting Dr. Parvez's opinion.

4

*Allman v. Colvin*, 813 F.3d 1326, 1331–32 (10th Cir. 2016). In applying these factors, the ALJ must make her findings and reasoning sufficiently specific so the weight given is clear to subsequent reviewers. *Langley*, 373 F.3d at 1119.

Here, Mr. Coleman was treated by Dr. Miranda. Dr. Miranda submitted a short opinion: Mr. Coleman cannot sit or stand for long periods of time; he needs to sit and stand at will due to back, leg, and neck pain. Tr. at 723. Mr. Coleman argues that the ALJ improperly discounted Dr. Miranda's opinion. The Commissioner responds that the ALJ's decision was based upon substantial evidence.

With regard to Dr. Miranda, the ALJ stated:

> I assign some weight to the opinion of the claimant's neurologist, Fernando Miranda, M.D., written on June 29, 2016. . . . Dr. Miranda is an acceptable medical source, and his opinion is for the most part consistent with the evidence of record, as described above, but sitting and standing at 30 minute intervals is consistent with the medical record, most noteworthy the examination just one month before this opinion, where degenerative changes were characterized as "mild." Further, this opinion was rendered *subsequent* to the hearing, in fact the day following, in which the vocational expert testified that a requirement to sit and stand "at will" means there are not occupations [in the national economy for Mr. Coleman to perform]. In the absence of previous limitations by this physician, under the circumstances, the weight is limited. Even the claimant testified that he can stand for 30 minutes at a time.

Tr. at 28 (citation omitted) (emphasis in original).

The first analytical step in assessing Dr. Miranda's opinions is to determine whether it is controlling. This requires the ALJ to determine whether it is well supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the record. If there is a deficiency in either regard, the opinion is not controlling. At each step, the ALJ is required to identify specific, good reasons for weight given to the opinion. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).

The ALJ did not identify any deficiencies in Dr. Miranda's clinical or laboratory

diagnostic techniques. She only noted that Dr. Miranda's opinion was inconsistent with an examination one month prior to the opinion (issued on October 19, 2016), which characterized Mr. Coleman's degenerative changes as mild. However, there is no accompanying citation to a September 2016 examination, and the Court cannot find any medical evidence in the record from a September 2016 examination. The record contains examination notes by Dr. Miranda dated June 14, 2016 (the date closest to the hearing date), but there is no mention of mild changes. Tr. at 562–66. Although an ALJ is not obligated to specify every piece of evidence on which he or she relies, an ALJ must discuss the medical evidence in a manner such that it is clear how the evidence supports the decision. *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Here, the Decision does not point the Court to any evidence in the record that is inconsistent as found by the ALJ. Without evidence of inconsistency or deficiencies in Dr. Miranda's clinical or diagnostic techniques, his opinion is controlling. Thus, the RFC should have contained a restriction that allowed Mr. Coleman to change position at will.

Instead, the ALJ relied upon Mr. Coleman's testimony that he can stand for 30 minutes at a time as a substitute for Dr. Miranda's opinion. The ALJ characterizes this testimony as being inconsistent with Dr. Miranda's opinion, but it is not. Mr. Coleman may be able to stand for 30 minutes, but that does not mean that he can sit for 30 minutes as well. Indeed, during the hearing, Mr. Coleman asked if he could stand for part of his testimony. Tr. at 45–46. The ability to stand and sit at will is different than being able to stand and sit in 30 minute increments. Substitution of Mr. Coleman's testimony as to his ability to stand for Dr. Miranda's opinion constitutes legal error, both because Dr. Miranda's opinion is controlling and because Mr. Coleman's statement is inconsistent with it. Such error is not harmless because the restriction imposed by Dr. Miranda would preclude Mr. Coleman's ability to be gainfully

6

employed in the national economy.

## V.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED AND REMANDED** for further proceedings consistent with this opinion.    Judgment shall enter in favor of Mr. Coleman.

Dated this 11th day of December, 2018.

**BY THE COURT:**

_____
Marcia S. Krieger
Chief United States District Judge